UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION
NO.: 11-11431

CAPE COD HOSPITAL,
    Petitioner

vs.

1199 S. E. I. U. UNITED HEALTHCARE
WORKERS EAST,
    Respondent

## CAPE COD HOSPITAL'S PETITION TO VACATE ARBITRATION AWARD

INTRODUCTION

    The Petitioner, Cape Cod Hospital (hereinafter "the Petitioner"), by and through its undersigned counsel, Foley & Foley, P.C., hereby petitions this Honorable Court to vacate the July 11, 2011 arbitration award entered in favor of the Respondent. As grounds for this Petition, the Petitioner states that the arbitrator who heard and rendered a decision in the arbitration that gives rise to this Petition exceeded his powers and displayed a manifest disregard of the law.

    The grievance that underlies this Action arose from the Petitioner's decision to award electrophysiology training to an employee of its choosing. The employee was admittedly not the most senior interested employee, but was, in the reasoned opinion of the employer, the best available candidate. The Petitioner has maintained throughout this dispute that the clear and plain language of the CBA grants the Petitioner the right to decide who, when and how to train its employees. The arbitrator ignored the plain language of the parties' collective bargaining agreement ("the CBA") and relied upon a separate, outdated agreement, one not incorporated

1

into the CBA, to overturn the employer's decision with regard to the training. In other words, the

arbitrator elected to incorporate terms and provisions into the CBA that were not bargained and

agreed upon by the parties when they negotiated. Then, to the detriment of the Petitioner, the

arbitrator relied upon those not bargained provisions in rendering his Opinion and Award.

The arbitrator thereby exceeded his authority, granted relief beyond that to which the Petitioner

bound itself and rested his award on faulty reasoning. See *Salem Hospital v. Massachusetts*

*Nurses Association,* 449 F.3d 234 (2006).

## THE PARTIES

1.      The Petitioner is a private non-profit corporation located in Hyannis, Barnstable County

Massachusetts.

2.      The Respondent, 1199 S. E. I. U. United Healthcare Workers East (hereinafter "the

Respondent"), is a labor organization a principal place of business in Dorchester, Massachusetts.

## JURISDICTION

3.      This Court has jurisdiction over this matter pursuant to the Labor Management Relations

Act (LMRA). Labor Management Relations Act, 1947, § 301(a), 29 U.S.C.A. § 185(a).

## MATERIAL FACTS

4.      The Petitioner and Respondent are parties to a collective bargaining agreement that was

originally in effect from October 1, 2005 through September 30, 2009, but which was later

extended with minor changes through September 30, 2011 ("the CBA").  (See a copy of the

relevant sections of the CBA, attached as Exhibit "A".)

5.      Article XI, Section 21.1 of the CBA -- "Scope of CBA" - states:

> This document constitutes the entire Agreement arrived at as the
> result of collective bargaining negotiations between the Hospital
> and the Respondent.    The Hospital and the Respondent
> acknowledge that during the negotiations which resulted in the

2

Agreement, each had the unlimited right and opportunity to make demands with respect to any subject or matter not removed by law from the area of collective bargaining, and that the understanding and agreements arrived at by the parties after the exercises of that right and opportunity as set forth in this Agreement.

6.     In late 2009, a dispute arose between the Petitioner and the Respondent regarding the

Petitioner's decision to award electrophysiology training to an employee named Tanner Pulsifer.

7.     Article XVI of the CBA – "Grievance and Arbitration" - reads:

> Section 16.2, Grievance Procedure - In the event of a controversy concerning the meaning or application of any provision of this Agreement, such controversy shall be treated by the Respondent and the Hospital as a grievance and shall be settled, if possible, by the Respondent, the worker and the Hospital as set forth herein.
>
> Section 16.5, Arbitration - In the event that the dispute shall not have been satisfactorily settled within 20 days of the failure of a Step 2, above, upon application by the Respondent, each grievance shall be referred to an arbitrator chosen pursuant to the procedure developed by the parties. The decision of the Arbitrator on any grievance submitted under this article will be final and binding on all parties… **The Arbitrator shall have no authority to add to, subtract from, or modify, in any way, the terms and provisions of this Agreement.** (Emphasis added)

8.     Under Section 16.2 of the CBA, the Respondent filed a grievance challenging the

selection of Mr. Pulsifer, arguing that he was not the most senior employee interested in the

training. The Petitioner denied that grievance arguing that training opportunities are not awarded

by seniority under the CBA and that Mr. Pulsifer was the best candidate for the training. (See the

grievance documents, attached as Exhibit "B")

9.     Under Section 16.5 of the CBA, the grievance then proceeded to arbitration on March 1,

2011, March 15, 2011 and April 4, 2011. (See Exhibit C and D – Sections of the transcripts to

the hearings on those three dates)

10.    In the arbitration, the issue placed before the Arbitrator was:

> *Did the Petitioner violate the collective bargain agreement by the*
> *manner in which it offered electrophysiology ("EP") training to*
> *Tanner Pulsifer?  If so, what should be the remedy?*

(See p. 14 of Exhibit C, the transcript for March 1, 2011)

11.    During the arbitration, the Petitioner's principle argument was that the CBA is devoid of

any provision dictating that training must be awarded to the most senior employee under any

circumstances.  To the contrary, the CBA contains multiple provisions granting the employer the

authority to decide who to train. (See Exhibit "F" – the Petitioner's Closing Brief and pp. 49-50

of Exhibit "C")

12.    Under the "Management Rights" provision of the CBA, Section 20.1, the Petitioner

retained control over the training of its employees.  That section states, "…Without limiting the

generality of the foregoing, the Petitioner reserves to itself the right to establish and administer

policies and procedures relating to…education, **training**…" (Emphasis added) (See Exhibit "A"

– Section 20.1)

13.    Section 22.1 of the CBA, entitled "Professional Advancement," lends emphatic support

to the Petitioner's position that it retained control over training under the CBA, including on-the-

job and in-department training.  As stated above, Section 22.1 says, **"In-service training will be**

**made available to staff members as designated by the Petitioner."**  There is even a specific

example in Section 22.1 of how the Petitioner exercises its discretion relative to on-the-job

training.  The parties agreed that laboratory workers could, "at the discretion of Laboratory

Administrative Supervisor", cross-train throughout their department.  Section 22.1 does not

contain the word seniority and it does not suggest or imply that seniority is a consideration.

(Emphasis added) (See Exhibit "A"– Section 22.1)

4

14.     Article XIV, and in particular Section 14.3, "Application of Seniority," of the CBA references specific instances when Seniority is a consideration under the CBA. **Section 14.3, does not contain any reference to training, thereby excluding training by omission**. (See Exhibit "A"– Section 14.3)

15.     During the arbitration, the Respondent argued that a booklet entitled "Career Ladders Program" with a revision date of 1994 had been incorporated into the CBA and controlled the Petitioner's decision on the training issue. (See the copy of the cover for the booklet attached hereto for identification as Exhibit "E")

16.     The Petitioner denied that the booklet was a part of the CBA and denied that it controlled its decision on the training issue. (See Exhibit "F" and pp. 49-50 of Exhibit "C")

17.     The Respondent cited to two sections of the CBA as primary support for its position - Section 11.3 of the CBA and also the letter of intent found on p. 115 (Appendix G) of the CBA. The Respondent has alleged that those provisions somehow incorporate the "Career Ladder Program, rev. 1994" into the CBA. (See p. 61 and p. 115 of Exhibit "C" attached hereto)

18.     There is absolutely no language in Section 11.3, Appendix G or any other section of the CBA that incorporates the "Career Ladder Program, rev. 1994" into the CBA. In fact, Appendix G to the CBA shows that the party's specific intent was not to include that an outdated Career Ladders booklet into their CBA. Appendix G says, "In particular, the parties agree to jointly develop a procedure for assessing Career Ladders and further agree to revisit and rewrite the Career Ladders book to capture the original intent and purpose of the Committee." (p. 115 of Exhibit "C" attached hereto)

19.     The evidence presented during the hearing proved that the "Career Ladder Program, rev. 1994" did not dictate the actions of the parties under the CBA relative to career advancement and

training.  Brian Basili, the Senior Manager of Labor and Employee Relations for Cape Cod Hospital, testified that the "Career Ladder Program, rev. 1994" does not reflect the career ladders system used by the parties at present. (See Exhibit "D" - p. 297)  This evidence was not refuted.

20.	After execution of the CBA in 2006, the parties (consciously or otherwise) tabled the idea of rewriting the career ladders book.  According to Mr. Basili, the Training and Upgrading Fund ("TUF") has become the forum in which training and professional advancement issues are principally discussed by Labor and Management.  The advent of the TUF, therefore, may have negated the need for the new book. (See Exhibit "D", pp. 297-8)  As of hearing of this grievance arbitration, the parties had not revisited and rewritten the Career Ladders book.

21.	The TUF began operating at the Petitioner's hospital in September 2006. (See Exhibit "C", p. 84)

22.	According to page 189 of the "Career Ladder Program, rev. 1994," the Respondent must first present any dispute relating to the "Career Advancement Program" to the "Joint Committee" and only when that committee is unable to resolve the issue, will the matter be allowed to proceed to the grievance process of the CBA.  (See Exhibit "E", p. 189)

23.	The Respondent never brought this dispute to the Career Ladders Committee for review.

24.	The Respondent learned of the Petitioner's decision to train Mr. Pulsifer on October 22, 2009.  (See Exhibit "G")

25.	The Career Ladders Committee met in November and December 2009. (See Exhibit "H")

26.	On July 11, 2011, the Arbitrator delivered his Opinion and Award to the parties.  In that Opinion and Award, the Arbitrator ruled that "the Petitioner violated the Agreement by the manner in which it offered EP training to Tanner Pulsifer." The Arbitrator then provided the following as the basis of his decision,

The Petitioner selected Pulsifer from among those qualified employees who had expressed interest in EP training without having considered the relative Hospital seniority of all qualified, interested employees. To fail to treat the Petitioner seniority of those qualified employees' who were competing for the EP training which the Petitioner offered in the Cath Lab 'as the primary determinant' for selection for that training is to violate the 'premise' of the career advancement system' which the parties established in their Career Ladder Program Book."

(See p. 20 of the Arbitrator's Opinion and Award attached as Exhibit "I")

27.    As a secondary argument, the Petitioner argued that one of the interested candidates who grieved the decision, Leonard Borusky, was not qualified for the training because he did not have any cardiac training. Petitioner understood that the issue agreed upon was deemed to incorporate the question of Mr. Borusky's qualifications. (See Exhibit C – p. 7, line 7 through Page 8; p. 13 line 21 through p. 14, line 18; and, p. 50, lines 15-18)

28.    The evidence presented at arbitration was that the Hospital told Mr. Borusky that he was not selected for the training because he did not have cardiac training/experience. (Exhibit "J", p. 71, Day II of the hearing)

29.    The arbitrator wrote under "Remedy" in his Opinion and Award that, "The Hospital does not claim the either Frye or Borusky is unqualified for the EP Training opportunity…" (Exhibit "I", p. 24.

## APPLICABLE LEGAL STANDARD

30.    It is well established that,

> [A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award. *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960).

31.     [T]he question whether an arbitrator exceeded his or her authority is always subject to

judicial review." *Board of Higher Educ. v. Massachusetts Teachers Assn., NEA,* 62

Mass.App.Ct. 42, 47 (2004)

32.     Although the grounds for judicial vacatur of an arbitrator's decision are limited,

> an arbitrator's decision is not entirely impervious to judicial oversight. In
> very limited circumstances, a party may succeed in challenging an
> arbitrator's interpretation of an agreement. '[T]he paramount point to be
> remembered in labor arbitration is that the power and authority of an
> arbitrator is totally derived from the collective bargaining agreement and
> that he violates his obligation to the parties if he substitutes 'his own brand
> of industrial justice' for what has been agreed to by the parties in that
> contract.' *Salem Hosp. v. Massachusetts Nurses Ass'n,* 449 F.3d 234, 238
> (1st Cir. 2006)(citing *Georgia-Pac. Corp. v. Local 27, United
> Paperworkers Int'l Union,* 864 F.2d 940, 944 (1st Cir.1988) (quoting
> *United Steelworkers of Am. v. Enter. Wheel & Car Corp.,* 363 U.S. 593,
> 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)).

33.     "If the language of an agreement is clear and unequivocal, an arbitrator cannot

give it a meaning other than that expressed by the agreement." *Poland Spring Corp. v.

United Food and Commercial Workers Int'l Union,* 314 F.3d 29, 33 (1st Cir.2002) (citing

*Georgia-Pac. Corp. v. Local 27, United Paperworkers Int'l Union,* 864 F.2d 940, 944

(1st Cir.1988)).

34.     A federal court may also vacate an arbitral award "when there was misconduct by

the arbitrator, when the arbitrator exceeded the scope of her authority, or when the award

was made in manifest disregard of the law." *JCI Commc'ns, Inc. v. IBEW, Local 103,* 324

F.3d 42, 48 (1st Cir.2003). To prove "manifest disregard of the law," the challenger must

show that the arbitration award was: "(1) unfounded in reason and fact; (2) based on

reasoning so palpably faulty that no judge, or group of judges, could ever conceivably

have made such a ruling; or (3) mistakenly based on a crucial assumption that is

concededly a non-fact." *Ramos-Santiago v. UPS,* 524 F.3d 120, 124 (1st Cir. 2008)

There must also be "some showing in the record, other than the result obtained, that the

arbitrator [] knew the law and expressly disregarded it." *Id. (quoting Advest, Inc. v.*

*McCarthy,* 914 F.2d 6, 10 (1st Cir.1990)).

35.     Where the contract is clear, the arbitrator's award must be supported by the

language found within the four corners of the collective bargaining agreement. See

*UMass Memorial Medical Center, Inc. v. United Food And Commercial Workers Union,*

527 F.3d 1, 5 (1st Cir. 2008).

ISSUES PRESENTED

I.      The first issue present here is whether the arbitrator exceeded his authority by

failing to apply the contract in a plausible manner and by incorporating the "Career

Ladder Program, rev. 1994" over the Petitioner's objection.

II.     The second issue presented is whether the arbitrator's award was made in

manifest disregard of the law because the arbitrator looked beyond the four corners of the

CBA for the authority for his decision.

III.    The third issue is whether the arbitrator's determination that the Hospital was not

challenging the qualifications of Leonard Borusky was error and grounds to vacate, in

whole or in part, his Award.

ARGUMENT

I.      The arbitrator exceeded his authority by failing to apply the contract in a plausible

manner" and by incorporating the "Career Ladder Program, rev. 1994" over the

Petitioner's objection. *Salem Hosp., supra.* (quoting *Labor Relations Div. of Constr.*

*Indus. of Mass. v. Int'l Bhd. of Teamsters,* 29 F.3d 742, 746 (1st Cir. 1994)

9

II.     The arbitrator's award was made in manifest disregard of the law because the
arbitrator looked beyond the four corners of the CBA for the authority for his decision.

III.    The arbitrator's determination that the Hospital was not challenging the
qualifications of Leonard Borusky was error and grounds to vacate, in whole or in part,
his Award.

## ANALYSIS

It therefore defies logic to suggest that the parties would on the one hand agree that they
need a new book for Career Ladders, while on the other hand agree to incorporate the old book
into their CBA. Through Appendix G to the removed the booklet entitled "Career Ladder
Program, rev. 1994" from the CBA.

The Petitioner's position on this issue is made clear, and supported, by the Respondent's
deeds and words. "Career Ladder Program, rev. 1994" states on page 189 that the Respondent
must first present any dispute relating to the "Career Advancement Program" to the "Joint
Committee" and only when that committee is unable to resolve the issue, will the matter be
allowed to proceed to the grievance process of the CBA.   The Respondent learned of the
Petitioner's decision to train Mr. Pulsifer on October 22, 2009. (Exhibit "G") Despite that
knowledge and the occurrence of two meetings of the Career Ladders Committee in November
and December 2009, the Respondent did not present the EP training dispute to the Committee for
review. (Exhibit "H") If the Respondent truly believed that Respondent Exhibit #5 was
incorporated into the CBA and that it controlled the issues here before you, then the Respondent
would have brought that dispute to Career Ladders as required by the express language of
booklet.

Because the parties clearly intended to rewrite the book for Career Ladders and have yet to do, the Arbitrator has exceeded his authority by determining the content of the parties' agreement about Career Ladders before the parties have had a chance to negotiate those terms. In effect, the Respondent was permitted by the arbitrator to use this arbitration to set the terms of a Career Ladders program, without negotiation, and then the arbitrator put those terms into effect.

The arbitrator cannot add to or negate terms of the CBA. Such "remedies" go well beyond the scope of Article XVI of the CBA. (See Exhibit "A" – Section 16.5) By well establish common law, the arbitrator cannot look beyond the four corners of the CBA to render his award. In this case, the arbitrator both exceeded his authority and disregarded applicable law in rendering his award based upon the content of the "Career Ladder Program, rev. 1994".

In addition, the arbitrator ignored Petitioner's challenge to the qualifications of Leonard Borusky, which also exceeded his authority, as that challenged was agreed to be a part of the issue before him. (See Exhibit C – p. 7, line 7 through Page 8; p. 13 line 21 through p. 14, line 18  50, lines 15-18)  If the award is not vacated, the arbitrator's failure to address that issue will lead to further conflict about whether or not Mr. Borusky qualifies for the training if more senior employees do not accept the training opportunity.  Therefore, at the very least the Award must be modified to address the qualification issue placed before the arbitrator.

The Petitioner incorporates herein by reference its Closing Brief from the arbitration. (Exhibit "F" hereto).

## CONCLUSION

WHEREFORE the Petitioner moves this Court to enter an order vacating the Opinion and Award (Exhibit "I") of the arbitrator for the reasons stated herein and to order the parties to

resubmit this matter to arbitration before a new arbitrator. In the alternative, the Petitioner moves the Court to order the original arbitrator to render a decision on the qualification issue that was put before him as part of the Issue within the subject arbitration. The Petitioner also seeks such other relief as the Court deems necessary and proper.

A supporting affidavit of Timothy G. Kenneally is attached hereto as Exhibit "K".

Cape Cod Hospital
by its attorney,

Timothy G. Kenneally
BBO# 564533
Foley & Foley, P.C.
350 Gifford Street, Suite 26
Falmouth, MA  02540
(508) 369-2894
tim@foleylawpractice.com

Dated: August 10, 2011