UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-11431-RGS

CAPE COD HOSPITAL

v.

1199SEIU UNITED HEALTHCARE WORKERS EAST

MEMORANDUM AND ORDER
ON CROSS MOTIONS FOR SUMMARY JUDGMENT

March 9, 2012

STEARNS, D.J.

Cape Cod Hospital (Hospital) brought this action against 1199SEIU United Healthcare Workers East (Union) under Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, seeking to vacate an arbitration award. The award stemmed from a grievance brought by the Union under the terms of its collective bargaining agreement (CBA) with the Hospital. The grievance arose from a dispute over the Hospital's decision to award electrophysiology (EP) training to a Cardiovascular Department (Department) member-employee with less seniority than other candidates. The arbitrator ruled for the Union. The Hospital objects to the award arguing that the arbitrator exceeded his powers and displayed a manifest disregard for the law. The Union cross moves for confirmation of the arbitration award. The Union

also requests attorney's fees.

## BACKGROUND

The Hospital, a non-profit institution located in Hyannis, Massachusetts, and the Union, with headquarters in Dorchester, Massachusetts, are parties to a CBA that was negotiated in 2005, with negotiated extensions that remained in effect until September 30, 2011. The CBA governed the wages, hours, and conditions of employment of the Hospital employees who figure in the dispute: Tanner Pulsifer, Steven Frye, and Leonard Borusky.

In fashioning the CBA, the Union and the Hospital had negotiated a training opportunities protocol called "Career Ladders." The CBA, Appendix G, committed the parties to "jointly develop a procedure of accessing Career Ladders and further agree to revisit and rewrite a Career Ladders book to capture the original purpose and intent of the Committee."[1] The protocol was presented to Hospital employees in a Career Ladders Program Book (CLPB), which is unchanged since originally written in 1994. The CLPB explained that "[t]he career advancement system is premised on a system of internal promotion; using hospital seniority for qualified workers as the primary determinant for education, training, and advancement." Def.'s Ex. 3 at i. The

---

[1] The parties' commitment to "study, develop and maintain a career ladders system" was also memorialized in Article XI, Section 11.3 of the CBA.

CLPB further emphasized that "hospital seniority shall be the primary determinant in enrollment in education or training courses, and receipt of any other form of hospital-sponsored educational assistance, whenever possible." *Id.* at 22.

The Department provides cardiac and vascular diagnostic and treatment services and employs a variety of technicians, including Radiation Technologists (RTs) and Cardiovascular Technologists (CVTs). Pulsifer is a CVT in the Department and has worked at the Hospital since 2007. Frye and Borusky are both RTs and have worked at the Hospital since 1999 and 2005, respectively. Pulsifer, Frye, and Borusky were all untrained in EP. Joanie Drushella, the Director of the Cardiovascular Procedure Area, designated Pulsifer for EP training in the fall of 2009, following the resignation of an EP-trained employee. The Union filed a grievance on behalf of Frye and Borusky, objecting to the selection of Pulsifer as the least senior of the three qualified candidates. The Hospital rejected the grievance and, pursuant to the CBA, the dispute went to arbitration.

The issue to be arbitrated was framed by the parties as follows: "Did the Hospital violate the collective bargaining agreement by the manner in which it offered EP Training to Tanner Pulsifer? If so, what shall be the remedy?" The Union argued during the arbitration proceeding that the Hospital had violated the terms of the CBA by selecting Pulsifer rather than the interested qualified employee with the greatest

seniority, as required by Career Ladders.  The Hospital maintained that neither the language in Section 11.3, nor Appendix G of the CBA specifically incorporated the terms of the CLPB into the CBA.  The arbitrator disagreed and ruled that the CLPB was an integral part of the CBA, and that the Hospital had therefore violated the CBA by failing to treat seniority as the "primary determinant" in selecting the candidate for EP training.  Arbitration Award at 20.  The arbitrator ordered the Hospital to "immediately offer EP training to Frye as the qualified EP training applicant with the most Hospital seniority."  Arbitration Award at 24.

## DISCUSSION

"[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  Federal courts have an extremely limited role in reviewing arbitration awards in labor contract disputes; a court must confine itself to determining whether the arbitrator's construction of the contract was in any way plausible. *The Mercy Hosp., Inc. v. Mass. Nurses Ass'n*, 429 F.3d 338, 343 (1st Cir. 2005); *Labor Relations Div. of Constr. Indus. of Mass., Inc. v. Int'l Bhd. of Teamsters*, 29 F.3d 742, 745 (1st Cir. 1994).  A court reviewing an arbitral decision does "not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." *United Paperworkers Int'l Union v. Misco, Inc.*,

484 U.S. 29, 38 (1987). "Essentially, a reviewing court should refrain from intervening in all but the most limited circumstances, those in which the challenger can establish that the arbitrator's award is '(1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling; or (3) mistakenly based on a crucial assumption that is concededly a non-fact.'" *Wheelabrator Envirotech Operating Servs., Inc. v. Mass. Laborers Dist. Council Local 1144*, 88 F.3d 40, 43-44 (1st Cir. 1996), quoting *Advest, Inc. v. McCarthy*, 914 F.2d 6, 8-9 (1st Cir. 1990).

Unless issues of fraud or corruption are raised, the question is simply "whether the arbitrators did the job they were told to do–not whether they did it well, correctly, or reasonably, but simply whether they did it." *Boston & Maine Corp. v. Bhd. of Maint. of Way Employees*, 94 F.3d 15, 18 (1st Cir. 1996), quoting *Bhd. of Locomotive Eng'rs v. Atchison, Topeka and Santa Fe Ry. Co.*, 768 F.2d 914, 921 (7th Cir. 1985). *See also Boston Med. Ctr. v. SEIU, Local 285*, 260 F.3d 16, 21-22 (1st Cir. 2001) (arbitrator plausibly read a "just cause for discipline" clause to incorporate a concept of progressive discipline)*; Keebler Co. v. Truck Drivers, Local 170*, 247 F.3d 8, 11 (1st Cir. 2001) (an arbitrator is free, however implausibly, to apply a higher standard of proof). *But see Poland Spring Corp. v. UFCWIU*, 314 F.3d 29, 34 (1st Cir. 2002) ("[O]nce an arbitrator finds that an employee has committed an act specifically listed

in the collective bargaining agreement as providing just cause for termination, the arbitrator is not free to fashion a separates remedy apart from the one provided by the parties' agreement."). A court need only be convinced that the arbitrator's reading of the bargaining agreement "draws its essence from [the contract]" and does not merely rely on the arbitrator's own notions of "industrial justice." *Misco*, 484 U.S. at 36, quoting *Steelworkers v. Enter. Wheel & Car Corp.,* 363 U.S. 593, 597 (1960).

The Hospital argues that the arbitrator essentially rewrote the CBA to include terms extracted from the CLPB that had not been fully adopted by the parties. The Hospital maintains that Section 11.3 and Appendix G of the CBA are simply statements of the parties' intent to someday implement the Career Ladders protocol. Because the negotiations of the CBA concluded in 2005 without the 1994 edition of the CLPB being revised, or so the Hospital's argument goes, its terms never became a part of the CBA. There is nothing inherently implausible in the Hospital's argument, just as there is nothing "unfounded in reason" or beyond the ken of any reasonable jurist in the arbitrator's reading of Appendix G as not mandating the rewriting of the CLPB as a condition precedent for the Career Ladders protocol taking effect.

Where the dispute between the parties involves the "gateway," that is, whether an agreement to arbitrate exists at all, the authority of a federal court to interject itself is large. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). *See also MCI*

6

*Telecomms. Corp. v. Exalon Indus., Inc.*, 138 F.3d 426, 428 (1st Cir. 1998) ("[T]here is no general legal duty to arbitrate private commercial disputes; instead, such proceedings are strictly the product of voluntary contractual obligations."); *Wolf v. Gruntal & Co., Inc.,* 45 F.3d 524, 528 (1st Cir. 1995) (any exercise of arbitral authority over claims uncovered by an arbitration agreement is without the consent of the parties, and is therefore an invalid exercise). If a party disputes the existence of an agreement to arbitrate, its remedy (not resorted to by the Hospital) is straightforward – it can refuse to participate in the proceedings and raise the nonexistence of the agreement in a confirmation of award hearing. *Id*. at 430. If, as is the case here, the issue is the extent of a conceded to be extant arbitration agreement, the rule is quite the reverse. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985), quoting *Moses H. Cone*, 460 U.S. at 24-25.[2]

The Hospital argues that in the alternative the case should be remanded to the

---

[2] The Hospital also argues that the arbitrator based his decision on a document – the CLPB – that was not physically a part of the integrated CBA. The argument is without force. It was well within the arbitrator's authority to determine that the CLPB was incorporated into the CBA through Section 11.3 and Appendix G, and he therefore did not rely on agreements outside of the CBA to make his decision.

7

arbitrator for further determination of whether Borusky is in fact qualified for EP training. The arbitrator, again, was within his authority to determine from the factual record before him that Borusky was qualified for EP training, even if (as the Hospital argues) he misstated the Hospital's position regarding Borusky's qualifications.[3] *See Prudential-Bache Sec., Inc. v. Tanner*, 72 F.3d 234, 240 n.9 (1st Cir. 1995). The arbitrator made findings of fact regarding Borusky's qualifications (based in part on the testimony of Drushella, his supervisor).[4] Even if this court were to disagree with the arbitrator's factual conclusions, it does not have the jurisdiction to rewrite them (or order them rewritten). *Misco*, 484 U.S. at 38 (a court reviewing an arbitral decision does "not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts.").

Finally, the Union asks the court to award it attorney's fees because of the Hospital's refusal to comply with the arbitration award. "Under federal common law,

---

[3] In the Remedy portion of his award, the arbitrator stated: "The Hospital does not claim that either Frye or Borusky is unqualified for the EP training opportunity – only that Pulsifer is more qualified. Because Frye and Borusky are not deemed to be unqualified the selection must be based on Hospital seniority." Arbitration Award at 24.

[4] When asked whether she had reason to believe that Borusky would not be successful in EP training, Drushella testified: "I would never say that he could never learn it, no. I believe that he would have struggled and would have gained and had a much better chance to succeed if he had cardiac experience, yes." Arbitration Award at 11.

a court may award fees and costs to the winning party in a section 301 action if the losing party's position was 'frivolous, unreasonable, or without foundation." *Local 2322, Int'l Bhd. of Elec. Workers v. Verizon New England, Inc.*, 464 F.3d 93, 100 (1st Cir. 2006), quoting *Local 285, Serv. Employees Int'l Union AFL-CIO v. Nonotuck Res. Assoc. Inc.*, 64 F.3d 735, 737 (1st Cir. 1995).  Here, I cannot say that the Hospital's claims are entirely without foundation (as reflected by the fact that I find its interpretation of the scope of the CBA as equally plausible as that of the arbitrator). Consequently, the attorney's fees request will be denied.

### ORDER

For the foregoing reasons, the Union's motion for summary judgement is <u>ALLOWED</u>.  The Hospital's cross motion for summary judgment is <u>DENIED</u>.  The arbitrator's award is <u>CONFIRMED</u>.  The Clerk will enter judgment accordingly and close the case.

SO ORDERED.

/s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE